UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

ROBIN PAYTON,                      )
                                   )
                 *Plaintiff*,      )
                                   )
        v.                         )        No. 4:20-cv-00257-JMS-DML
                                   )
JOHNSON & JOHNSON and              )
ETHICON, INC.,                     )
                                   )
                 *Defendants*.     )

## ORDER

Plaintiff Robin Payton brings this action against Johnson & Johnson ("J&J") and Ethicon, Inc. ("Ethicon"), alleging that she was injured by Defendants' pelvic mesh product. Ms. Payton filed her Complaint on December 28, 2020,[1] [Filing No. 1], and Defendants filed a Motion to Dismiss on March 10, 2021, [Filing No. 21]. In lieu of filing a response, Ms. Payton filed a First Amended Complaint (the "Amended Complaint") on March 15, 2021. [Filing No. 23.] Defendants filed a Motion to Dismiss the Amended Complaint on March 29, 2021, [Filing No. 31], which is now ripe for the Court's review.

**I.**
**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and

---

[1] Pursuant to an agreement between the parties, Ms. Payton's Complaint was deemed filed as of February 23, 2017. [Filing No. 32 at 12.]

1

draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Amended Complaint,[2] which the Court must accept as true at this time.

Defendant J&J is a corporation that develops and manufactures several products, including medical devices. [Filing No. 23 at 2.] Defendant Ethicon is a wholly owned subsidiary of J&J that focuses its work on the development and manufacture of medical devices. [Filing No. 23 at 2.] Together, Defendants developed, manufacture, and distribute a pelvic mesh product called "Gynecare TVT" (the "TVT Product"). [Filing No. 23 at 1.] The TVT Product is

---

[2] As discussed more fully below, the Amended Complaint is very lengthy. Accordingly, the following factual summary is not intended to be a full recap of Ms. Payton's factual allegations, but rather a short synopsis of the relevant factual background.

used to treat stress urinary incontinence ("SUI") and must be surgically implanted.  [Filing No. 23 at 3.]

Ms. Payton was implanted with a TVT Product ("the Implant" or "Ms. Payton's Implant") on June 7, 2010 by Dr. Carol Borden.  [Filing No. 23 at 1.]  Sometime after her surgery, Ms. Payton "developed complications arising from the implant of the Ethicon pelvic mesh product, including mesh implant complications necessitating removal, worsening mixed incontinence, pelvic pain, dyspareunia, difficulty voiding, dysuria, frequency, nocturia, urinary tract infections, urgency, stress, anxiety, fear, sadness, and anger."  [Filing No. 23 at 1-2.]

The TVT Product is one of many pelvic mesh products on the market used to treat SUI.  [Filing No. 23 at 6.]  The TVT Product suffers from numerous defects.  [Filing No. 23 at 4-6.]  For example, the TVT Product uses polypropylene mesh, which is a type of plastic.  [Filing No. 23 at 4.]  Polypropylene mesh is not inert, and instead is "biologically incompatible with human tissue," and causes numerous complications and injuries.  [Filing No. 23 at 4-5.]  Likewise, the design of the TVT Product causes it "to be inserted into and through an area of the body that is blood vessel rich, nerve dense, and bacteria laden leading to excessive blood loss and vascular damage, permanent nerve injury and associated chronic, intractable neuropathic pain, contaminated permanently-implanted mesh causing chronic infections, subclinical infections and biofilms, enhanced chronic inflammatory response, chronic wound healing with tissue destruction, as well as numerous other adverse reactions and serious permanent injuries."  [Filing No. 23 at 15.]  "The TVT [P]roduct is also defective due to Defendants' failure to adequately warn or instruct the Plaintiff and/or her health care providers of known" dangers or defects.  [Filing No. 23 at 17.]

Defendants knew or should have known that the TVT Product was not safe, and presented several risks to the women who were implanted with the device. [Filing No. 23 at 19.] Despite that knowledge, Defendants have failed to disclose the dangers to Ms. Payton, to her physician, and to the public at large, and have instead continued to market the TVT product as safe. [Filing No. 23 at 20-21.] Defendants "willfully, intentionally, and maliciously misrepresented and concealed facts . . . from Plaintiff and her physicians." [Filing No. 23 at 21.]

In her Amended Complaint, Ms. Payton sets forth the following counts against Defendants: (1) Indiana Product Liability Act ("IPLA") Negligent Design; (2) IPLA Design Defect; (3) IPLA Manufacturing Defect; (4) IPLA Failure to Warn; (5) IPLA Breach of Express Warranty; (6) IPLA Breach of Implied Warranty; (7) IPLA Fraudulent Concealment; (8) IPLA Constructive Fraud; (9) IPLA Negligent Misrepresentation; (10) IPLA Common Law Fraud; (11) Violation of Indiana Deceptive Trade Practices Laws;[3] (12) IPLA Gross Negligence; (13) Unjust Enrichment; and (14) Punitive Damages. [Filing No. 23.] Defendants filed a Motion to Dismiss in which they "request that the Court dismiss all of [Ms. Payton's] First Amended Complaint and all claims included therein." [Filing No. 31 at 1.] That Motion is fully briefed, [Filing No. 32; Filing No. 33; Filing No. 37], and is ripe for the Court's review.

### III.
### DISCUSSION

#### A. Rule 11

As a general word of caution at the outset of this case, Rule 11 provides that when an attorney presents a pleading, written motion, or other paper to the Court, the attorney certifies

---

[3] Ms. Payton's Claim for Violation of Indiana Deceptive Trade Practices Laws appears to refer to the Indiana Deceptive Consumer Sales Act, Ind. Code. § 24-5-0.5-0.1 *et seq.* (the "IDCSA"). Consistent with the title of the statute, the Court will refer to this claim as being brought pursuant to the IDCSA.

that it is not being presented for any improper purpose, that the claims, defenses, and legal contentions are warranted by existing law, and that factual contentions have evidentiary support. Fed. R. Civ. P. 11.

With respect to this case specifically, the parties dispute whether Ms. Payton's Amended Complaint is a "shotgun pleading." [*See* Filing No. 32 at 4-5; Filing No. 33 at 2-7.] Defendants argue that the Amended Complaint "impermissibly incorporate[s] every antecedent allegation into each cause of action." [Filing No. 32 at 4.] They cite to several cases in which other trial courts have dismissed similar complaints as "shotgun pleadings," and ask the Court to do the same with Ms. Payton's Amended Complaint. [Filing No. 32 at 5-6.] Defendants also argue that Ms. Payton's Complaint is virtually identical to other complaints filed across the country. [Filing No. 32 at 2.]

Ms. Payton responds that her Amended Complaint is not a shotgun pleading, and she argues that she "merely incorporates all 'material facts,' not every paragraph, into each cause of action." [Filing No. 33 at 3.] She argues that to the extent her Amended Complaint is the same as other complaints filed by her counsel, that is because "the factual background for all these cases, where women were implanted with the Defendants' pelvic mesh products, *is the same, and is necessary*." [Filing No. 33 at 5 (emphasis in original).] She contends that her Amended Complaint "specifically references the TVT [Product] Plaintiff was implanted with three hundred and forty-one (341) times." [Filing No. 33 at 5.] She argues that the Amended Complaint is "replete with material facts specific to the TVT [Product] Plaintiff was implanted with . . . and connects those facts to her claims." [Filing No. 33 at 7.] Therefore, she argues, the Court should not dismiss her Amended Complaint as an impermissible "shotgun pleading." [Filing No. 33 at 7.] Ms. Payton concludes with a request that she be given the opportunity to file a second

amended complaint if the Court determines that her Amended Complaint is deficient.  [Filing No. 33 at 20.]

The term "shotgun pleading" is used to describe complaints that utilize excessive incorporation.  *Martin v. Gorajec*, 2013 WL 319783, at *11 (S.D. Ind. Jan. 28, 2013).  Generally, so-called "shotgun pleadings" fall within a few categories.  Most often, a "shotgun pleading" results in a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).  Likewise, "shotgun pleadings" are frequently "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id.* at 1322.

Ms. Payton's Amended Complaint begins each count with an allegation stating that she "incorporates by reference each and every material fact of this Complaint as if fully set forth herein."  [Filing No. 23.]  Her argument that those allegations "merely incorporate[] all 'material facts,' not every paragraph," [Filing No. 33 at 3], and that it is "unbelievable" to conclude otherwise, [Filing No. 33 at 5], is disingenuous at best.  Ms. Payton does not have a section titled "Material Facts," and instead appears to seek to purposefully muddy the waters.  Surely Ms. Payton is not contending that she has included several "immaterial" facts in her Amended Complaint.  Instead, she seeks to use the phrase "material facts" as a defense against Defendants' critique of her pleading style, thereby putting the onus on Defendants and the Court to determine which facts she believes are "material" and which are not.[4]

---

[4] Ms. Payton also argues that "the allegations of each count are not rolled into every successive count."  [Filing No. 33 at 6 (quoting *Weiland*, 792 F.3d at 1324).]  Ms. Payton's reliance on *Weiland* is wholly misplaced and teeters dangerously on the line of misrepresenting the law to

There can be no question that Ms. Payton's Amended Complaint has all of the hallmarks of a "shotgun pleading."  However, the Court sees no need to decide whether to affix the blanket label of "shotgun pleading" to the Amended Complaint.  Instead of summarily dismissing the Amended Complaint and allowing Ms. Payton to file another amended complaint (which would almost assuredly result in another motion to dismiss), the Court will look to the content of the pleading and hold Ms. Payton to her allegations therein.  Ms. Payton is the master of her complaint, and she is permitted to use a one-size-fits-all complaint if she chooses.  However, that one-size-fits-all complaint must still comply with the Federal Rules of Civil Procedure, and Rule 11 in particular.  By signing the Amended Complaint, Ms. Payton's counsel has certified that each and every allegation contained therein has evidentiary and legal support, and the Court will credit that certification.  Nevertheless, in light of Ms. Payton's defense of the generic nature and style of her Amended Complaint, she is bound by the format and excessiveness of the allegations, even when that undermines her claims.

Ms. Payton has already had one opportunity to amend her Complaint after Defendants' initial Motion to Dismiss.  She chose to make few amendments, and her Amended Complaint is still largely generic.  If Ms. Payton seeks to amend her Amended Complaint, she may do so only with Defendants' consent or the Court's leave.  Fed. R. Civ. P. 15(a)(2).  And although Rule 15

---

the Court.  The language from *Weiland* quoted by Ms. Payton refers to a complaint in which the plaintiff "re-alleg[ed] paragraphs 1 through 49 at the beginning of each count." *Id.* at 1324.  In the very same paragraph, however, the *Weiland* court condemned the *exact pleading style* used in this case by Ms. Payton.  *See id.* ("[T]his Court has condemned the incorporation of preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor counts], leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'").  Ms. Payton's first allegation under each claim "incorporates by reference each and every material fact of this Complaint as if fully set forth herein."  [Filing No. 23.]  The Court struggles to differentiate Ms. Payton's Amended Complaint from the kind of complaint that the *Weiland* court condemned, and her reliance on that case as support for her position that her Amended Complaint is not a shotgun pleading defies logic.

directs the Court to freely give leave to amend where justice so requires, in light of the facts of this case, the Court will require a showing of good cause before giving Ms. Payton leave to amend her Amended Complaint.  Consequently, Ms. Payton's request to file a second amended complaint, [Filing No. 33 at 20-21], is **DENIED**.

The Court is well aware of the reality of claims like this—Ms. Payton's case is one of many being litigated by the lawyers involved on both sides.  But this is not a class action lawsuit or part of an MDL.  There is one plaintiff:  Ms. Payton.  Similarly, this is not a lawsuit about transvaginal mesh generally.  This is about the TVT Product manufactured by Defendants, and, more specifically, Ms. Payton's Implant.  Evidence regarding Defendants' representations and marketing may be relevant to certain claims and certain issues, but this Court expects—and Ms. Payton, Ethicon, and J&J deserve—that the focus of this litigation will be on Ms. Payton and the facts of this case.

So far, the Court has already stricken one filing (and, in doing so, noted that it could have stricken several others), and been forced to expend resources sifting through an unnecessarily lengthy 67-page, 265-allegation form complaint.  This Court is the third busiest in the nation. *See* United States Courts, U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (September 30, 2020), fcms_na_distprofile0930.2020.pdf (uscourts.gov). And while that caseload presents many challenges, it also means that this Court is familiar with all types of lawsuits, including product liability.  This lawsuit will be decided on the facts of this case only and in accordance with the appropriate legal standards.

### B.  Indiana Product Liability Act Claims

The IPLA, Ind. Code § 34-20-1-1 *et seq.*, "governs all claims brought by a consumer against a manufacturer for physical harm caused by its product, regardless of legal theory."

*Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007 (7th Cir. 2020).   Under the IPLA, "a manufacturer who places 'into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer . . . is subject to liability for physical harm caused by that product.'" *Id.* (quoting Ind. Code § 34-20-2-1).

A plaintiff bringing an action under the IPLA "must establish that (1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006).   "A plaintiff can satisfy the second element by showing a design defect, a manufacturing defect, or a failure to warn.*" Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (citing *Hathaway v. Cintas Corp. Serv., Inc.*, 903 F. Supp. 2d 669, 673 (N.D. Ind. 2012)) *abrogated on other grounds by Kaiser*, 947 F.3d 996.   Design defect and failure-to-warn liability is grounded in negligence, and the statute imposes strict liability for claims based on a manufacturing defect. *Kaiser*, 947 F.3d at 1008.   In addition, "[w]hether a product is unreasonably dangerous is a distinct inquiry and must be established whether the claim is based on a manufacturing defect, a design defect, or a defective warning." *Id.*   "A product is unreasonably dangerous when it 'exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers.'" *Id.* (quoting Ind. Code § 34-6-2-146).

"The IPLA includes all products liability actions 'regardless of the substantive legal theory or theories upon which the action is brought,'" *Jarrett v. Wright Medical Tech., Inc.*, 2019

WL 2567708, at *5 (S.D. Ind. June 21, 2019) (quoting Ind. Code § 34-20-1-1), and there is "a clear preference for 'merging claims into a single IPLA action (whether it is based on theories of manufacturing defect, design defect, failure to warn, or a combination thereof),'" *Jarrett*, 2019 WL 2567708, at *5 (quoting *Cavender v. Medtronic, Inc.*, 2017 WL 1365354, at *4 (N.D. Ind. Apr. 14, 2017)).  Thus, Ms. Payton has one IPLA claim, and the Court's discussion will center on the theories she may pursue to prove that IPLA claim.

### 1. *Design Defect*

Defendants argue that Ms. Payton's Amended Complaint does not discuss the specific design of the TVT Product, but instead generically addresses the alleged design of several pelvic mesh products.  [Filing No. 32 at 7.]  They argue that "[o]ther than criticizing [the TVT Product] for containing polypropylene, the [Amended Complaint] states very little about how the design of the product was flawed, and instead, it focuses on conclusory assertions that [the TVT Product] had a propensity for complications."  [Filing No. 32 at 7.]  Defendants also argue that Ms. Payton "pleads no facts whatsoever that would plausibly link her injuries to the alleged defect(s)."  [Filing No. 32 at 7.]  They assert that she fails to allege facts that would show that her injuries "are plausibly the result of a defect with the TVT [Product] as opposed to an injury that is consistent with any SUI surgery and that was an expected risk of TVT surgery."  [Filing No. 32 at 7.]

Ms. Payton responds that her design defect claim is properly pled.  [Filing No. 33 at 8.] She argues that her Amended Complaint "details an extensive list of design defects which specifically caused her injuries, including but not limited to: migration, degradation, shrinkage, contracture, fragmentation, and/or otherwise deformation."  [Filing No. 33 at 8 (citing Filing No.

23 at 28-29).]  Ms. Payton argues that she is not required to identify the specific design defect at this stage of the litigation.  [Filing No. 33 at 9.]

Defendants reply that Ms. Payton "has not sufficiently pled the essential element of causation by setting forth facts that would plausibly link Ms. Payton's injuries to a defect in the design of the product."  [Filing No. 37 at 3.]  Defendants argue that because Ms. Payton's allegations "virtually mirror" allegations filed by plaintiffs in other cases, she is essentially asking the Court to accept "a generic 'one-size-fits-all' complaint that is not tailored to her factual circumstances."  [Filing No. 37 at 3.]  Defendants conclude that Ms. Payton did not attempt to distinguish her claims from the cases cited in Defendants' initial brief.  [Filing No. 37 at 4.]

As explained above, the IPLA "grounds design-defect . . . liability in negligence:  a plaintiff must 'establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product.'"  *Kaiser*, 947 F.3d at 1008 (quoting Ind. Code § 34-20-2-2).  More generally, "[n]egligence claims have three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach."  Hayden v. Franciscan Alliance, Inc., 131 N.E.3d 685, 693 (Ind. Ct. App. 2019).

Generally, Ms. Payton alleges that the TVT Product's design suffered from several defects, [Filing No. 23 at 29-30], that these defects existed at the time the implant left Defendants' control, and that these defects caused her injuries, [Filing No. 23 at 19].  Ms. Payton alleges that she "developed complications arising from the implant of the Ethicon pelvic mesh product, including mesh implant complications necessitating removal, worsening mixed incontinence, pelvic pain, dyspareunia, difficulty voiding, dysuria, frequency, nocturia, urinary tract infections, urgency, stress, anxiety, fear, sadness, and anger."  [Filing No. 23 at 1-2.]  Ms.

Payton also sets forth several defects in the design of the TVT Product, as well as the harm that those defects cause.  For example, she alleges that some defects were "the inelasticity of the TVT product, causing it to be improperly mated to the delicate and sensitive areas of the pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvis (e.g., intercourse, defecation)," [Filing No. 23 at 29], and "the propensity of the collagen TVT product to disintegrate after implantation in the female pelvis, causing pain and other adverse reactions," [Filing No. 23 at 30].  Although these allegations could certainly be more specific, they sufficiently allege that the identified defects caused certain injuries and that Ms. Payton suffered those injuries because of the Implant.[5]

Accordingly, Ms. Payton's allegations are sufficient to set forth a plausible claim for relief under a design defect theory, and Defendants' Motion to Dismiss is **DENIED** as to that claim.[6]

---

[5] To clarify, a design defect claim necessarily deals with *Ms. Payton's* injuries, not injuries potentially suffered by other women.  The "propensity" of the TVT Product to have a design defect is irrelevant if that defect did not manifest in Ms. Payton's Implant or proximately cause Ms. Payton's injuries.

[6] In her Amended Complaint, Ms. Payton sets forth claims for Negligent Design (Count 1) and Gross Negligence (Count 12).  [Filing No. 23 at 24; Filing No. 23 at 60.]  "[T]he legislature intended that the [IPLA] govern all product liability actions, whether the theory of liability is negligence or strict liability in tort."  *Warner-Borkenstein v. American Medial Sys., Inc.*, 2020 WL 364019, at *3 (N.D. Ind. Jan. 21, 2020) (quoting *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002)).  "[N]egligence is the standard that applies to product liability claims based on theories of design defect and failure to warn."  *Wortman v. C.R. Bard, Inc.*, 2019 WL 6329651, at *8 n.5 (S.D. Ind. Nov. 26, 2019).  Ms. Payton's claim for Negligent Design (Count 1) is therefore duplicative of her design defect claim.  Moreover, "[t]he gross negligence claim fares no better.  There are no degrees of negligence in Indiana.  As such, . . . the gross negligence claim . . . is likewise subsumed within the IPLA."  *Warner-Borkenstein*, 2020 WL 364019, at *4 (dismissing negligence and gross negligence claims as subsumed by IPLA).  Accordingly, Ms. Payton's claims for Negligent Design and Gross Negligence are **DISMISSED** as duplicative.

2.  *Manufacturing Defect*

Defendants argue that Ms. Payton "does not allege *how* [the Implant] deviated from Ethicon, Inc.'s specifications such that it was different than any other TVTs that were manufactured and such that it was different than intended." [Filing No. 32 at 9 (emphasis in original).] They argue that Ms. Payton "does not allege that the polypropylene mesh that was in [the Implant] was any different than the polypropylene mesh in any other TVT product, and [she] do[es] not plead any facts suggesting how the polypropylene deviated from specifications." [Filing No. 32 at 9.] Defendants add that such an allegation is not even possible because Ms. Payton "faults the design of all TVT devices for incorporating polypropylene mesh that purportedly degrades." [Filing No. 32 at 9.] Defendants further argue that Ms. Payton fails to allege facts that would show causation. [Filing No. 32 at 10.]

Ms. Payton responds that her "manufacturing defect claim is properly pled and should not be dismissed." [Filing No. 33 at 10.] Ms. Payton argues that she is not required to specify the precise defect or federal regulatory requirements that were violated in order to state a claim. [Filing No. 33 at 10 (citing *Fisk v. Medtronic*, 2017 WL 4247983, at *5 (N.D. Ind. Sept. 25, 2017)).] She concludes that her "manufacturing defect claim can be proven by developing the evidence to show the TVT product did not work as intended and deviated from its intended design when it left the hands of Defendants." [Filing No. 33 at 10.]

Defendants reply that Ms. Payton's allegations and arguments in her Response "fail to address the critical issue of causation." [Filing No. 37 at 4.] They argue that Ms. Payton may not simply rely on *res ipsa loquitor* to plead her manufacturing defect claim, and note that she has not attempted to distinguish her claim from the cases cited in Defendants' initial brief.

[Filing No. 37 at 4-5 (citing *D'Addario v. Johnson & Johnson*, 2021 WL 1214896, at \*4 (D. N.J. Mar. 31, 2021)).]

To succeed on an IPLA claim based on a manufacturing defect theory, the plaintiff must prove that: "(1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries." *Timm v. Goodyear Dunlop Tires N.A. Ltd.*, 309 F. Supp. 3d 595, 600 (N.D. Ind. 2018) (quoting *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)).   "A product contains a manufacturing defect when it deviates from its intended design." *Hathaway*, 903 F. Supp. 2d at 673.

Ms. Payton's Amended Complaint contains two relevant factual allegations regarding a manufacturing defect:

96.   The product implanted in the Plaintiff was not safe for its intended use and was defective as described herein as a matter of law with respect to its specific manufacture, in that it deviated materially from Defendants' design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to the Plaintiff.

97.   Defendants' TVT device that was implanted in Plaintiff deviated from its intended design by utilizing a polypropylene mesh that degrades, contracts, shrinks, frays, cords, migrates, stiffens, hardens, is cytotoxic, causes chronic inflammation, loses pore size with tension, and/or otherwise deforms.

[Filing No. 23 at 31-32.]

These allegations are insufficient to state a claim under a manufacturing defect theory. First, the Amended Complaint lacks any allegations explaining the intended proper design of the TVT Product.  Second, Ms. Payton does not allege facts showing how, in even the most general sense, Ms. Payton's Implant deviated from the intended design of the TVT Product.  Ms. Payton offers the conclusory allegation that the Implant deviated from its design by using a

polypropylene mesh that suffers from several defects or side effects. [Filing No. 23 at 32.] But from that allegation, it is not clear what the intended design was, and in turn, how the Implant deviated from that design. For example, it is not clear whether Ms. Payton asserts that the wrong type of mesh altogether was used (*i.e.* the design called for non-polypropylene mesh) or that the wrong polypropylene mesh was used (*i.e.* the design called for a different type of polypropylene mesh than that used in Ms. Payton's Implant). Nor does she allege with any specificity that the correct type of polypropylene mesh was used, but the particular piece of mesh used in the Implant was somehow defective, or that that the correct mesh was used and the mesh itself was not defective but that some other defect arose during the manufacturing/assembly of the Implant. Instead of offering the most basic details,[7] Ms. Payton's allegation reads more like an allegation of a design defect, with the conclusory buzz words "deviated from its intended design" tossed in. That sole conclusory allegation is insufficient to state a claim under the IPLA based on a manufacturing defect.[8] Therefore, Ms. Payton's IPLA claim based on a manufacturing defect is **DISMISSED**.

---

[7] This is not to say that Ms. Payton must identify the specific defect—the Court is not reaching that issue. But Ms. Payton must allege, at a minimum, facts showing that the product deviated from its intended design.

[8] Aside from the insufficiency of the allegations, Ms. Payton's imprecise and incorporation-based pleading might have precluded Ms. Payton's manufacturing defect claim for another reason. As she did throughout her Amended Complaint, her first allegation under her "manufacturing defect" claim "incorporates by reference each and every material fact of this Complaint as if fully set forth herein." [Filing No. 23 at 31.] That allegation, therefore, incorporates Ms. Payton's allegations that the design of the TVT Product was defective because the *design* suffered the same defects that she identified in her manufacturing defect claim. In other words, due to her excessive incorporation, Ms. Payton has alleged that the defects that caused her injuries were the result of a defective design *and* a result of a product that was not manufactured according to its design. The contradiction is clear and might have been independent grounds for dismissal. *See Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. Oct. 4, 2006) (holding that because the plaintiff incorporated by reference its prior allegations, the plaintiff failed to plead contradictory claims in the alternative).

### 3. Failure to Warn

Unlike in their initial Motion to Dismiss, [Filing No. 22], Defendants do not address Ms. Payton's claim under the IPLA based on a failure to warn.   Accordingly, to the extent Defendants' Motion seeks dismissal of that claim, Defendants' Motion is **DENIED.**

### C. Warranty Claims

Defendants argue that Ms. Payton's warranty claims are time-barred.  [Filing No. 32 at 11.]   They contend that the warranty claims are brought pursuant to the Indiana Uniform Commercial Code (the "UCC"), which imposes a four-year statute of limitations, and the discovery rule does not apply.  [Filing No. 32 at 11.]  Defendants argue that the TVT Product was delivered on June 7, 2010—the implant date—and Ms. Payton's lawsuit was deemed filed as of February 23, 2017.  [Filing No. 32 at 11-12.]  Defendants also argue that "Indiana law requires privity for claims of express warranty and implied warranty of fitness for a particular purpose," but that Ms. Payton does not "plead facts that would plausibly show that she relied on any purported warranty made by Defendants."  [Filing No. 32 at 12.]  They argue that "it is evident from the Complaint that [Ms. Payton] was not in privity of contract with either of the Defendants, and she identifies no specific representations from Defendants that were conveyed to her.  [Filing No. 32 at 12.]  Finally, Defendants argue that the Amended Complaint "does not identify any specific promise or affirmation of fact made by either of the Defendants related to TVT [Product]."  [Filing No. 32 at 12-13.]

In response, Ms. Payton argues that her warranty claims are pled with "specific allegations of promises and affirmation of facts made by Defendants related to the TVT [Product]."  [Filing No. 33 at 10.]  Ms. Payton argues that her warranty claims are brought pursuant to the IPLA, not the UCC, and therefore the claims are not time barred.  [Filing No. 33

at 10.] Even if the claims are brought under the UCC, Ms. Payton argues, her claims are not time-barred because she "alleges that Defendants warranted that their TVT device extends to future performance," and it is therefore premature to decide if the statute of limitations precludes the warranty claims. [Filing No. 33 at 11-12.] Ms. Payton also argues that she has properly pled that the discovery rule tolls the statute of limitations. [Filing No. 33 at 12.]

Defendants reply that the plain language of Ms. Payton's Amended Complaint "makes it clear that her warranty claims are grounded in contract." [Filing No. 37 at 5.] They contend that "[a]llegations of privity and duties related to pre-suit notice requirements are tell-tale signs of a contract-based claim for breach of warranty under the UCC." [Filing No. 37 at 5 (citing Filing No. 23 at 40-41).]

The Court agrees with Ms. Payton that her breach of warranty claims sound in tort. Ms. Payton's breach of warranty claims are similar to those presented in many other cases: product liability claims for personal injuries. *See, e.g., Cavender v. Medtronic, Inc.*, 2017 WL 1365354, at *6-7 (N.D. Ind. Apr. 14, 2017); *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1024 (N.D. Ind. 2011); *Lyons v. Leatt Corp.*, 2015 WL 7016469, at *3 (N.D. Ind. Nov. 10, 2015). But, "[a]s the Indiana Supreme Court has noted, 'several federal district courts and other panels of the [Indiana] Court of Appeals have held that tort-based breach of warranty claims have been subsumed into the [IPLA].'" *Cavender*, 2017 WL 1365354, at *6 (quoting *Kovach v. Midwest*, 913 N.E.2d 193, 197 (Ind. 2009)). "To be clear, a contractual breach of warranty claim would not be governed by the IPLA, but as this court has explained, when the claim, as here, is for tortious personal injury, the breach of warranty claim is subsumed by the IPLA." *Cavender*, 2017 WL 1365354, at *6. *See also Atkinson*, 813 F. Supp. 2d at 1023-25 ("District courts and Indiana appellate courts have clarified that . . . breach of implied warranty claims that sound in

tort are redundant with strict liability claims under the IPLA."); *Henderson v. Freightliner, LLC,* *2005 WL 775929, at \*3 (S.D. Ind. Mar. 24, 2005)* ("The IPLA effectively supplants both the common law negligence claims and the breach of implied warranty claims.").

Unlike the cases cited above, however, in this case, it is Ms. Payton, the plaintiff, who argues that the claims sound in tort, and Defendants who contend that the claims sound in contract.  *See Cavender*, 2017 WL 1365354, at \*7 ("Cavender works hard to convince the Court that her breach of warranty claims are distinct from her tort claim for various reasons, but she shies away from even attempting to refute the obvious—her allegations not only sound in tort, they scream in tort." (citations omitted)); *Atkinson*, 813 F. Supp. 2d at 1023 ("[Plaintiff] argues that her claim for breach of express and/or implied warranties, Count II, should not be deemed supplanted by the IPLA and dismissed because it was brought under Indiana's [UCC] and sounds in contract, not tort."); *Lyons*, 2015 WL 7016469, at \*3.  And while it is somewhat curious that the parties in this case have taken the opposite positions as the respective plaintiffs and defendants in the cases cited above, the parties' motives are not the Court's concern.  The Court agrees with Ms. Payton that her breach of warranty claims sound in tort, and as such, those claims are subsumed by the IPLA, and, accordingly, they are **DISMISSED**.

### D.  Fraud-Based Claims

In her Amended Complaint, Ms. Payton identifies four fraud-based claims:  fraudulent concealment, constructive fraud, negligent misrepresentation, and common law fraud.  [Filing No. 23.]

Defendants argue that Ms. Payton has not pled her fraud-based claims "under the heightened standard of particularity required by Fed. R. Civ. P. 9(b)."  [Filing No. 32 at 13.] They contend that Ms. Payton does not identify the time, place, or content of the alleged

misrepresentations and instead only offers generalized accusations that Defendants "misrepresented the safety and efficacy" of the TVT Product. [Filing No. 32 at 13.] Aside from a lack of particularity, Defendants argue that Ms. Payton's fraudulent concealment claim fails because she does not sufficiently "allege some form of special relationship with Defendants that justifies imposing a duty to disclose" material facts. [Filing No. 32 at 14.] Defendants argue that Ms. Payton's negligent misrepresentation claim fails because that claim requires proof "that the defendant supplied false information for the guidance of others in their business transactions." [Filing No. 32 at 15 (internal quotations and emphasis omitted).] Finally, Defendants argue that Ms. Payton's "common law fraud" claim should be dismissed "because it is duplicative of her 'fraudulent concealment' claim." [Filing No. 32 at 16.]

Ms. Payton responds that she "has satisfied the particularity requirement for these claims and went beyond it," and quotes, in full, nineteen paragraphs from her Amended Complaint. [Filing No. 33 at 14-17.] Regardless, she argues, "the particularity requirement for these claims is relaxed since the 'requisite information was within the defendant's exclusive knowledge.'" [Filing No. 33 at 18 (quoting *Lautzenhiser v. Coloplast A/S*, 2012 WL 4530804, at *7 (S.D. Ind. Sept. 29, 2012)).] Ms. Payton contends that "it is undisputed that case-specific discovery has not commenced, and Defendants maintain specific information relating to their communications and correspondence with Plaintiff's implanting physicians." [Filing No. 33 at 18.]

Defendants reply that Ms. Payton "makes no meaningful attempt to demonstrate that her fraud and misrepresentation claims comply with Rule 9(b)," and that she pled "no facts as to time, place, and substance of the Defendants' alleged fraud, specifically the details of the Defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." [Filing No. 37 at 6.] They argue that the particularity requirement is not relaxed because "[i]t is

counterintuitive for [Ms. Payton] to claim that she is unable to identify the misrepresentations that she supposedly relied on."  [Filing No. 37 at 7.]

To reiterate, "[t]he IPLA includes all products liability actions 'regardless of the substantive legal theory or theories upon which the action is brought,'" *Jarrett*, 2019 WL 2567708, at *5 (quoting Ind. Code § 34-20-1-1), and there is "a clear preference for 'merging claims into a single IPLA action (whether it is based on theories of manufacturing defect, design defect, failure to warn, or a combination thereof) ...,'" *Jarrett*, 2019 WL 2567708, at *5 (quoting *Cavender*, 2017 WL 1365354, at *4).  In *Jarrett*, the Court stated, "[the plaintiff] claims that his injury resulted from [the defendant's] fraud in withholding information about the reported harms generated by metal on metal hip implants, despite [the defendant's] having been aware of studies to that effect.  [The plaintiff's] fraud allegations are a part of the product liability theory of failure to warn of a product defect which causes physical harm; the fraud claim is thus subsumed by the IPLA," and the court dismissed the plaintiff's fraud claim.  *Jarrett*, 2019 WL 2567708, at *5.  *See also Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, 2006 WL 449207, at *1 (N.D. Ind. Feb. 22, 2006) ("Given that Plaintiff's Amended Complaint asserts state common law claims for negligence as well as fraud, those claims must be dismissed. In light of this holding, the court need not address the issue of the sufficiency of Plaintiff's pleading with regard to allegations of fraud. Whether Plaintiff has pleaded fraud with 'sufficient particularity' as mandated by Fed. R. Civ. P. 9, or whether Plaintiff's allegations of fraud are sufficient under Fed. R. Civ. P. 12(b)(6), are effectively moot, since no independent cause of action for fraud can be maintained based on the facts of this case.").  Ms. Payton's fraud claims are nearly identical to the claims and allegations in *Jarrett*.

As a final note, although both the *Ryan* and *Jarrett* courts expressly elected to not address the issue of particularity,[9] at least some discussion is warranted in light of the pleading practice in this case.  In her Response to Defendants' Motion to Dismiss, Ms. Payton's arguments, perhaps ironically, amount to little more than conclusory statements themselves.  She states that she "has satisfied the particularity requirement for these claims and went beyond it," and then quotes several paragraphs from her Amended Complaint.  [Filing No. 33 at 14.]  After doing so, she again offers the conclusory argument, "Thus, Defendants are put on sufficient notice of Plaintiff's fraud-based claims and they should not be dismissed."  [Filing No. 33 at 17.]  She does not add any context to her allegations nor identify particular portions of her allegations that she believes set forth the who, the what, the where, the when, and the how.  In lieu of an extended discussion of the lack of particularity, the Court turns its attention to one allegation that exemplifies the generic, reused, and non-particular nature of these allegations.  Paragraph 72 of Ms. Payton's Amended Complaint, which is quoted in full in Ms. Payton's Response, reads:

> Defendants' above-referenced misrepresentations were made by Defendants' retained key opinion leaders, agents, employees, representatives, or any other person acting on behalf of Defendants.  These statements were made to Plaintiff's implanting physician at the hospital where **he** conducted Plaintiff's implant surgery, **his** office or practice, any training or educational sessions offered by Defendants, and/or at any professional organization meetings or presentations.

[Filing No. 23 at 22-23; Filing No. 33 at 17 (emphasis added).]  Aside from the patent vagueness of the allegation ("made by Defendants' retained key opinion leaders, agents, employees, representatives, or any other person acting on behalf of Defendants" and "any professional

---

[9] Ms. Payton's assertion that the particularity requirement of Rule 9 is relaxed because the requisite information is within Defendants' "exclusive knowledge," [Filing No. 23 at 44], is without merit.  Ms. Payton's fraud allegations are, essentially, that the Defendants misrepresented facts to her and her physician.  Therefore, information about when, where, how, and to whom those misrepresentations were made is necessarily not within Defendants' exclusive knowledge.

organization meetings and presentations" can hardly be said to be particular), Ms. Payton's implanting physician was a woman:  Dr. Carol Borden.  [Filing No. 23 at 1; Filing No. 33 at 14.]  Despite inaccurately alleging in the Amended Complaint that the misrepresentations were made to Dr. Borden at "his" office and where "he" conducted the surgery, Ms. Payton failed to rectify the mistake in her Response.  These are the sort of clearly re-used and generic allegations and litigation tactics that the Court will not tolerate going forward in this case.

In sum, Ms. Payton's fraud claims are subsumed by the IPLA and are therefore **DISMISSED**.

### E.  Indiana Deceptive Consumer Sales Act

Defendants argue that Ms. Payton failed to plead her claim under the IDCSA with particularity required by Rule 9.  [Filing No. 32 at 16.]  Defendants also argue that her claim is time-barred by the IDCSA two-year statute of limitations.  [Filing No. 32 at 16-17 (citing Ind. Code 24-5-0.5-5).]  Defendants argue that the discovery rule does not apply and because Ms. Payton's surgery was on June 7, 2010, her claim expired on June 7, 2012.  [Filing No. 32 at 17.]

Ms. Payton responds that "this claim is not barred by the statute of limitations due to Defendants' fraudulent concealment and waiver of this defense, and it meets Rule 9(b)'s heightened pleading standard (assuming the allegations are not relaxed)."  [Filing No. 33 at 18.]

Defendants reply that Ms. Payton "does not dispute that her claims under the [IDCSA] are time-barred and that they are governed by the heighted pleading standard of Rule 9(b)." [Filing No. 37 at 8.]

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir.

2009).  "But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674-75 (citation omitted).  If "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense," a court should not dismiss a claim at the pleading stage based on the statute of limitations. *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Claims brought under the IDCSA must be brought within two years "after the occurrence of the deceptive act." Ind. Code § 24-5-0.5-5(b).  Ms. Payton alleges that she relied on Defendants' deceptive acts in deciding which product(s) to purchase for her surgery, which occurred on June 7, 2010.  [Filing No. 23 at 1.]  Accordingly, Ms. Payton's claim under the IDCSA expired no later than June 7, 2012, two years after her surgery.

Ms. Payton does not dispute that the relevant statute of limitations is two years, but instead argues that the statute of limitations is tolled because of Defendants' "fraudulent concealment and waiver." [Filing No. 33 at 12.]  The fraudulent concealment doctrine tolls the statute of limitations, but "Indiana law narrowly defines concealment." *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1151 (N.D. Ind. Aug. 26, 1983).  For the fraudulent concealment doctrine to apply, "[t]he concealment must be active and intentional; passive silence is insufficient to trigger the fraudulent concealment doctrine, absent allegations that the defendant was in a continuing fiduciary relationship with the plaintiff.  The affirmative acts of concealment must be calculated to mislead and hinder the plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation." *Tolen*, 570 F. Supp. at 1151.  Moreover, the defendant must have concealed *the cause of action* from the plaintiff. *Wojcik v. Almase*, 451 N.E.2d 336, 339 (Ind. Ct. App. 1983).

23

Ms. Payton does not identify with particularity any affirmative acts of concealment that were calculated to mislead or conceal the existence of a possible claim from her.  In *Tolen*, on which Ms. Payton relies, the court considered whether the fraudulent concealment doctrine applied in a product liability case involving an intrauterine contraceptive device.  The court held:

> The fraudulent concealment doctrine does not apply to the allegations in this case.  Plaintiff has relied upon allegations that [the defendant] misrepresented pregnancy rates, complications, side effects, hazards and dangers and radiopacity of the Dalkon Shield in an active manner calculated to prevent the plaintiff from ascertaining that legal injury had been done to her. . . .  Courts which have addressed this issue are in agreement that this is not a case in which plaintiff was hindered by the action or lack of action on the part of [the defendant] from filing a complaint during the period when she could have brought this lawsuit.

*Tolen*, 570 F. Supp. at 1152.

The allegations in this case are similar to those in *Tolen*.  Ms. Payton alleges that Defendants' product had several defects, and that the complications and side effects were more severe and pervasive than Defendants marketed.  These allegations are not sufficient to implicate the fraudulent concealment doctrine.  In sum, Ms. Payton does not allege any acts by Defendants that somehow concealed the existence of a cause of action from her.  Likewise, she has not offered any support for her position that there is an "intrinsic" general fiduciary duty between a medical device manufacturer and a consumer, and therefore Defendants were under no obligation to inform Ms. Payton that she had a cause of action.  Ms. Payton has pled herself out of Court by alleging facts demonstrating this lawsuit's tardiness.  Accordingly, Ms. Payton's claim for a violation of the IDCSA is **DISMISSED**.

### F.  Unjust Enrichment

Defendants argue that unjust enrichment "is an equitable remedy, not a vehicle for receiving compensatory damages," and is limited to restitution.  [Filing No. 32 at 17.]  They argue that Ms. Payton's unjust enrichment claim should be dismissed because it "does not sound

in contract or quasi-contract, but in tort," noting that Ms. Payton alleges that she has not entered into any contractual relationship with Defendants for the purchase of the TVT Product. [Filing No. 32 at 18.]  In addition, Defendants argue that Ms. Payton's allegations are conclusory, and that she fails to plead that the TVT Product was infective in treating the condition it was designed to address, nor does she plead facts showing the precise benefit she conferred on Defendants. [Filing No. 32 at 18.]

Ms. Payton responds that she is not requesting compensatory damages in connection with her unjust enrichment claim, but is instead seeking "the specific relief of restitution." [Filing No. 33 at 18.]  Ms. Payton argues that she alleged that "there is no contract between the parties for the purchase of the TVT . . . to show that she has a cognizable claim for unjust enrichment, which would be otherwise absent if there were a valid contract between the parties." [Filing No. 33 at 19.]  Therefore, Ms. Payton claims, she is not precluded from seeking payment from Defendants under a quasi-contract theory. [Filing No. 33 at 20.]

In reply, Defendants argue that Ms. Payton does not cite to any authority "supporting her contention that she may recover damages under a quasi-contract theory." [Filing No. 37 at 8.]

"To prevail on a claim of unjust enrichment, a plaintiff must demonstrate that a benefit was rendered to another party (the defendant) and that allowing the defendant to retain the benefit without paying for it would be unjust." *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011) (citing *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991).  The appropriate remedy for such a claim is restitution. *Lautzenhiser*, 2012 WL 4530804, at *8.

Ms. Payton alleges that she paid Defendants for the TVT Product, but she has not received "the safe and effective TVT medical device for which she paid." [Filing No. 23 at 62.] She further alleges that it would be inequitable for Defendants to keep the money since she did

not "receive a safe and effective TVT medical device." [Filing No. 23 at 62.] These allegations, taken as true, state a claim for unjust enrichment. *Cotton v. Ethicon, Inc.*, 2021 WL 736211, at *8 (N.D. Ind. Feb. 25, 2021) ("The Cottons assert that Ms. Cotton paid Ethicon for the Prolift and TVT-O mesh products, but she has not received the safe and effective devices for which she paid. They further claim that it would be inequitable for Ethicon to keep this money since Ms. Cotton did not, in fact, receive a safe and effective medical device as represented by Ethicon. Taken as true, this would meet the unjust enrichment requirements." (citations omitted)). Although recent cases indicate that Ms. Payton may face an uphill battle at summary judgment with respect to this claim, *see Cotton*, 2021 WL 736211, at *8 (stating, in ruling on motion for summary judgment in a similar product liability case, "while the Cottons *are* asserting a proper claim for restitution, nevertheless, it fails because they did not demonstrate any evidence that meets the required elements of unjust enrichment."); *Porogi v. Ethicon, Inc.*, 2020 WL 4676571, at *9 (N.D. Ind. Aug. 12, 2020) (holding the same), her allegations are sufficient at this stage of the litigation. If Ms. Payton "can demonstrate as a factual matter that [the TVT Product is], in fact, defective and therefore worth less than [she] paid for [it], then [she] . . . will have shown that Defendants obtained a benefit (a higher sale price) at [her] expense." *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1104 (S.D. Ind. 2001). *See also Armstrong v. Deere & Co.*, 2017 WL 4168485, at *8-9 (S.D. Ind. Sept. 20, 2017); *Lautzenhiser*, 2012 WL 4530804, at *8. Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Ms. Payton's claim for unjust enrichment. As Ms. Payton points out, this claim is limited to restitution, and she may not recover compensatory damages.

### G.  Punitive Damages

Defendants argue that Ms. Payton's "Punitive Damages" claim should be dismissed because punitive damages "is not a recognized cause of action in Indiana."  [Filing No. 32 at 19.]

Ms. Payton responds that her punitive damages claim is properly pled.  [Filing No. 33 at 20.]  She argues that punitive damages are cognizable in Indiana, and "whether Plaintiff's claim for punitive damages is alleged under a 'Count' subheading or in a paragraph without a 'Count' subheading is of no legal significance."  [Filing No. 33 at 20.]

While Ms. Payton is correct that punitive damages are cognizable in Indiana, a claim for punitive damages is not a separate cause of action.  *Grimes v. Jones*, 567 N.E.2d 858, 860 (Ind. Ct. App. 1991) ("[T]here is no separate cause of action for punitive damages."); *Hurd v. Monsanto*, 908 F. Supp. 604, 613 (S.D. Ind. 1995) (punitive damages is not recognized by Indiana courts as an independent cause of action).  Accordingly, Ms. Payton may still pursue punitive damages, but to the extent Ms. Payton asserts a separate claim for punitive damages, that claim is **DISMISSED**.[10]

---

[10] This ruling should not be read as a decision on the propriety of a punitive damage recovery, but simply a ruling that there exists no separate cause of action for punitive damages.  *Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 563 (Ind. Ct. App. 1999) (affirming award of punitive damages against manufacturer in IPLA case)).  Should the evidence warrant, the jury would be permitted to consider whether to award punitive damages.

**IV.**

**CONCLUSION**

Based on the foregoing, the Court makes the following rulings:

1. Defendants Motion to Dismiss, [31], is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The Motion is **DENIED** to the extent that Defendants' seek dismissal of the Amended Complaint on grounds that it is an impermissible "shotgun pleading";[11]

   b. The Motion is **DENIED** as to Ms. Payton's IPLA claim on design defect (Count 2) and failure to warn (Count 4) theories;

   c. The Motion is **GRANTED** as to Ms. Payton's IPLA claim on a manufacturing defect theory (Count 3), (and, inherently, strict liability for a defective product), and that claim is **DISMISSED WITH PREJUDICE**;

   d. The Motion is **GRANTED** as to Ms. Payton's claims for Negligent Design (Count 1), Breach of Express Warranty (Count 5), Breach of Implied Warranty (Count 6), Fraudulent Concealment (Count 7), Constructive Fraud (Count 8), Negligent Misrepresentation (Count 9), and Common Law Fraud (Count 10), and Gross Negligence (Count 12), as those claims are subsumed by the IPLA claim, and they are **DISMISSED WITH PREJUDICE**;

   e. The Motion is **GRANTED** as to Ms. Payton's claims for Violation of the IDCSA (Count 11) and the standalone claim for Punitive Damages (Count 14), and those claims are **DISMISSED WITH PREJUDICE**;

---

[11] This ruling should not be read as a pronouncement that Ms. Payton's Amended Complaint is not a shotgun pleading.   Rather, the Court declines to summarily dismiss the Amended Complaint on grounds that it is a shotgun pleading.

    f.   The Motion is **DENIED** as to Ms. Payton's claim for Unjust Enrichment (Count 13).

2.   Ms. Payton's request to file a second amended complaint, [Filing No. 33 at 20], is **DENIED**.  If Ms. Payton still seeks to file a second amended complaint, she must obtain Defendants' written consent or demonstrate good cause to the Court.

3.   To summarize, the following claims **shall proceed**:

    a.   Ms. Payton's IPLA claim, and she may demonstrate defect through the design defect and failure to warn theories;

    b.   Ms. Payton's claim for unjust enrichment, for which she may only seek restitution.

In addition, though not a separate claim, Ms. Payton may seek recovery of punitive damages.

Date: 5/13/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**